FROM PITT.
Robert White and wife having a title to the land had, on 6 January, 1816, conveyed it to one W. J. Stanton, who immediately reconveyed it to White, in mortgage, for the purpose of securing the purchase money, and afterwards sold to Beeman; on 4 April, 1826, a declaration in ejectment, at the instance of White was served on the plaintiff, and (484) on 4 August, following, he was evicted under final process in that suit.
Upon the trial, the jury found specially that if the measure of damages was the original purchase money paid the defendant's intestate by Sheppard, with interest thereon from the date of the deed, they assessed the plaintiff's damages to $6,383.79. If the same sum with interest from the service of the declaration, then they assessed the damages to $4,447.55. If the purchase money paid by the plaintiff to Glasgow, with interest from the date of the deed, was the measure of damages, then they assessed them at $4,302. If interest was to be taken only from the service of the declaration in ejectment, they assessed the damages to $4,050. The jury also, upon both views of the case — viz., the plaintiff's right to recover the whole purchase money paid by Sheppard, and that paid by himself, assessed damages contingently from the time of the *Page 315 
eviction, and also they found the actual value of the land and the improvements at the time of serving the declaration and at the eviction.
NORWOOD, J., upon the verdict, rendered judgment for the plaintiff for $4,475.55, being the purchase money paid by Sheppard to the defendant's intestate, with interest thereon from the service of White's declaration; from which judgment the defendant appealed.
In actions between the vendee and his immediate vendor upon the covenant for quiet enjoyment, it is the settled law of this State that the value of the lands at the time of the sale shall be the measure of the damages; and in cases of actual sales, the purchase money is conclusive evidence of that value. This is the (485) case where a covenant or warranty is annexed to an estate in fee, and the eviction is from the whole estate. What may be the rule where there is a partial eviction of the estate, as the recovery of a life estate, or other interest less than a fee, or where the covenant is annexed to an estate less than a fee, is, as far as I know, not determined by our Courts. The interest upon the purchase money is merely incidental, and depends upon the circumstances of each case. It ordinarily runs during the time that the tenant is liable for the profits to the rightful owner. When he is not so liable, the profits are set off against it. Had this action, therefore, been brought against Glasgow, Williams' immediate vendor, it would have presented no difficulties, governing ourselves by former decisions. Is the case varied by its being brought against Beeman, a remote vendor, and whose estate, with his covenants annexed thereto, have come to Williams? I think that it is not; for Beeman cannot be bound to pay to Williams more than Williams ought to receive. If he has money in his hands belonging to some other person, there is no reason why it should be paid to Williams. Now it is settled that the purchase money paid by Williams to Glasgow is the measure of Williams' damages, and the fact that he is substituted to the estate of Sheppard, and to the covenants entered into with Sheppard for its enjoyment and protection, does not thereby substitute him to Sheppard's claim to damages in case the latter had been evicted. He is only substituted to Sheppard's covenants to redress his own, not Sheppard's, injuries, in regard to the estate. But as there is no privity of contract between Williams and Beeman, the injury of the former cannot exceed the liability of the latter upon his covenant. But it may fall short of it. Neither would the case be varied, if the action in this case had been brought by Sheppard, as it is said it might be. For Sheppard *Page 316 
(486) having sold to Glasgow, and Glasgow to Williams, he, Sheppard, could only claim an indemnity, which is the amount of the consideration money paid by him who is evicted. And on this ground alone, or that he is trustee for the person evicted, can the action be sustained in his name. In either case Williams' injury is the one to be compensated. Should it be asked what is to become of the excess left in the hands of Beeman, for it is certain that he has given nothing for it? It is answered who can claim it? Not Williams, for under the rule established by our decisions, he has no pretence to receive it. Not Sheppard, for he sustains no damage by the bad title, further than he may be compelled to comply with the covenants in his deed. And it would be strange that he should be placed in a better situation by selling a bad title than a good one. For had the title been good, he must have been content with his loss upon his resale. Should it turn out to be bad, could he then regain his whole purchase money? In fact, the difference between what he gave and what he got for the land is sunk, is extinguished, and there is no person who can receive it by making a resale at a reduction in the price. The first sendee submits to the loss, and it can, therefore, form no part of a claim to an indemnity.
As to the interest in this case, it should commence from time the declaration in ejectment was served. From that time and not before the tenant is liable for mesne profits, as the eviction was by White under a mortgage from a former proprietor of the estate, under whom both plaintiff and defendant's intestate claimed. And in mortgages, where the mortgagor is in possession by the consent of the mortgagee, he cannot be made liable to the mortgagee for mesne profits, as he is not a trespasser, a wrong-doer, but a quasi tenant to the mortgagee. Williams, therefore, received the profits to his own use up to the time when White's declaration in ejectment was served.
I am of opinion, therefore, that the Judge erred in making the consideration money paid by Sheppard to Beeman the measure of (487) the damages. He should have taken the consideration money paid by Williams to Glasgow — to wit: $3,500, with interest from 5 April, 1826, the time when the declaration in ejectment was served.
HALL, J., concurred.